We are back from recess. Are my colleagues ready to take up the next case? Yes, we are. We will take up Klamath Irrigation District v. U.S. Bureau of Reclamation. We have received a letter from Council indicating their time. Each person will have their individual clock set for the time that they have informed us they will be arguing. Council, you may proceed. Good afternoon, Your Honors. Rich Deitchman appearing today for plaintiff appellant Shasta View Irrigation District et al. I will reserve one minute for rebuttal. Thank you. The Shasta View et al. parties, who I'm going to refer to as the water users today, include irrigation and special districts who are Klamath Project contractors, the Klamath Water Users Association, which is a nonprofit trade organization that represents Klamath Project contractors, and two individual farmers, Mr. Duval and Unruh, who farm in the Klamath Project on some of the farms that are among the 1,200 family farms and ranches in the project. And which encompasses over 170,000 acres of land. And all these farmers depend on Klamath Project supply for their livelihood. The question before the court today with respect to the water users is, do irrigation parties in the Klamath Project have a right under the Federal Administrative Procedure Act to file a lawsuit in a court in this circuit alleging that the United States Bureau of Reclamation has made an unlawful determination with respect to its operation procedures for the Klamath Project? Prior to this case, the answer to that question always was yes. The answer to that question should always be yes, and the district court decision must be overturned. I have three issues that I'd like to address today with respect to the water users' lawsuit. First, the tribes do not have a legally protected interest in the actual subject matter of the water users' lawsuit. To the extent the tribes do, which we submit they do not, the United States is an adequate representative for any tribal interest as tribal trustee. The second issue deals with Diné citizens, which really is the case without which we probably wouldn't be here today. We agree with the United States that Diné was incorrectly decided, but we also believe that Diné does not apply. And I have three factual distinctions I'd like to provide for you today that I think make clear that Diné does not apply to the water users' complaint. Finally, the third issue I'd like to address today is applying the Rule 19b factors, the case in equity and good conscience, must proceed to the merits, and the district court abuses discretion. The primary issue here is that even in Diné, the court said that the inquiry under Rule 19 is a practical one and fact-specific, and the district court did not engage in that practical and fact-specific analysis. So first on the interest issue, it's very important to look to the actual claims in the water users' lawsuit. Since you have limited time, I guess I'd be most interested in hearing on the adequate representation issue. And my question there is, is it your position that basically the United States is always an adequate representative of a tribe in the context of a dispute over water rights, just sort of hearkening to some of the background rules about the McCarran Amendment? Is that what you're arguing for, or are you saying that just more specifically here, they could be an adequate representative? First thing, Your Honor, I do want to correct one thing, at least in the water users' complaint, which is the SBID case. It's our position that the case isn't about water rights. The case is merely what we seek is a remand of the operating procedures for the Klamath Project in order to modify those operating procedures to conform with modern understandings of ESA law. Well, so is it your position or is it only Klamath's position that this is actually a McCarran Amendment administration suit? That's not the position of the water users, the SBID at all, complaint. That's not our position. That's a separate case. I'll let Mr. Leschewski address that issue. Counsel, excuse me, so what exactly are you challenging? Are you saying that the current operating procedures, which are based on the last BIOPS that were done, violate your rights? Yeah, we're saying that they are not. Water rights. Ours is not a water rights case. We're saying that Reclamation has adopted operating procedures, and those operating procedures rely on interpretations of the ESA, particularly the Section 7A2 consultation requirement that is outside the scope of current law. Okay, so your complaint then really does head right into DNA Citizens. So then how do you get around that case? Yeah, so with respect to DNA Citizens, there are three primary factual distinctions that I think I'd like to draw your attention to. And first, we also agree with the United States that it was not correctly decided in the first instance. But DNA first involved a challenge to an absent tribe's business interest. There, the absent tribal entity wholly owned the mine and was involved with the power plant. That was at issue. In this case, there's no business interest. There's no practical impacts on tribal business. Again, this is a challenge to the operations plan for a federal water project. That is possibly a difference. It's hard to see why that difference would be material, though. Well, in that case, you know, we're not – this case, contrary to how the appellees have framed this case, we're not challenging the senior water rights of the tribes to the extent they exist. Those – regardless of the outcome of the case, if we get a hearing on the merits, those rights will still exist. In that case, it was a direct challenge to the operation of the mine that the absent tribal entity owned. There were significant financial issues at stake. Counsel, aren't the tribes' rights, the antecedent rights, haven't we deemed them, or Supreme Court law, or our courts have deemed them to be coextensive with the protections under the Endangered Species Act that the Bureau of Reclamation must comply with before allocating subsequent water rights? Your Honor, respectfully, it's not a Supreme Court case. I think what you're referring to is Bailey v. United States, which was a takings case. It was decided by the federal circuit in the last year or so. You're exactly right in referring to Bailey. Yeah, it's our position that that case does not control or require the court to dismiss. In Bailey, the federal circuit, that was a takings case arising out of the 2001 water shutoff. In that case, Bailey said that a taking occurred, but there are senior rights of the tribes that control. But that's not an issue here. We're not challenging the tribes' water rights. We're merely seeking an APA review. We have a presumptive right to judicial review under the APA. We're seeking review of the operations plan for the Klamath Project. But the tribes say, well, you can call it that, but at the end of the day, we're going to lose some rights that we believe we have, or at least they're seriously threatened enough that we have the right to come in and intervene. But in this case, the tribes are saying, we don't even get a day in court. And so, again, this is not on the merits. We're just focused here on whether we have a right to make an Administrative Procedure Act claim against the Bureau of Reclamation, the Klamath Project contractors. Can I clarify? Are you saying that we don't have to reach whether or not this is a McCarran case, or you're firmly saying it is not a McCarran case? Because in my view, the easiest way to get out of D&A citizens is to say this is a McCarran case, and that case is not. We haven't made that claim in our case. The Klamath Irrigation District has made the claim that it's a McCarran case, and that's Mr. Leschewski's argument after mine. How can they both be a McCarran case and not be a McCarran case? What is your end goal? What remedy are you seeking? We're seeking a remand of the operating procedures for the Klamath Project to the Bureau of Reclamation in order to adopt procedures that are consistent with modern understanding of the ESA. So I'll give you an example. You said that, but what you really want is for there to be a lower water level at Lake Klamath and not to have any more in-stream releases of water by the Bureau of Reclamation that they are required to do under the current operational procedures. Isn't that the end goal of this lawsuit? I think the lawsuit is narrower than that. I mean, our goal is the example case that I want to provide was in the Central Valley Project, so another big reclamation project in the West. There's ongoing litigation, and it resulted in a case out of the Eastern District, NRDC v. Norton. That's cited in footnote one of our opening brief, and in there you had litigation regarding Central Valley Project contracts similar to reclamation contracts that my clients hold, and there has been new case law established on what are the requirements for consultation under Section 7A.2 and whether or not the contracts contain material provisions that might inert a benefit to an endangered, illicit species. So all we're asking for is that what we deem to be unlawful operating procedures get remanded, get reconsidered in light of what we think is new, modern, controlling understandings of the Endangered Species Act requirements. What that means is we're not attacking the senior water rights. The tribes will still have their senior water rights regardless. They would have an opportunity to challenge that. One last question real quick. If we were to find that it is a McCarran case in the McLamath litigation, do you want us to not find it's a McCarran case in your litigation? Well, I don't think our case is actually asking for the administration of water rights. The reason why we reference McCarran in our briefs is that going to the adequacy of representation, the U.S. Supreme Court is, you know, if you think that there's tribal water rights at issue, which again we don't think there are, the U.S. Supreme Court has acknowledged in Nevada of the United States that in a McCarran proceeding, that the government's unity of interest is so complete with the tribes that the United States sovereign immunity is waived and it can be brought into a state court general stream adjudication and make tribal claims whether the tribes decide to appear or not. So we think if there are tribal water rights at issue, again, which we don't think there are, certainly the United States is an adequate representative. It's even a heightened adequate representative because of Nevada United States. I think I'm out of time. You're over your time. That's the danger of splitting time. So I guess we'll go to the Claimant Irrigation District next. Yes, Your Honors. Good afternoon, Your Honors. May it please the Court. My name is Chris Leshefsky and I'm here representing the Claimant Irrigation District. I intend to save two minutes of my time for rebuttal. I think that Your Honors have already hit on what to me is one of the most important issues before the Court today, which is that it is critical to understand that KIV's complaint is very different in nature from Shasta View Irrigation District's complaint. I think this is the first and most fundamental error that the District Court committed, was conflating the two complaints as though they were alleging the same things. KIV is bringing a McCarran Amendment case. Reclamation's water rights have been determined, and the claimant faced an adjudication alongside KIV's water rights, at least in Oregon. That is compared to the Shasta View Irrigation District, which, as we understand it, is bringing a complaint alleging that Reclamation is exceeding its discretion under the ESA. They may be related to the same general subject matter, the Klamath Project, but they are very different legal theories. The Klamath Basin adjudication is clearly a general stream adjudication that falls within the McCarran Amendment. This Court held that approximately 30 years ago in the early 1990s. And in the KBA, the OWRB, the Oregon Water Resources Department, who is the water regulator in Oregon, determined water rights among many of the parties here. It determined water rights that were held by Reclamation, determined water rights that were held by KID, determined water rights that were held by the Klamath Tribes as well. That adjudication proceeds in two phases. The first was an administrative phase in front of OWRB, which lasted from 1978 until 2014, and culminated in an order that is now being reviewed in the judicial phase in front of the Klamath County Court. That judicial proceeding remains ongoing. But under Oregon law, the rights that were found by the Oregon Water Resources Department in the Klamath Basin adjudication are fully enforceable during the judicial phase. The overall policy of the McCarran Amendment was to allow both of the things that are in front of you today. It was to allow statewide water rights adjudications that were comprehensive and to which all parties could be joined, as well as suits to administer the rights that were found therein. And that is explicitly what KID is seeking in its complaint. Paragraphs 30 to 49 of the second amended complaint specify the rights that were found for KID, that separate other and certain rights were found for Reclamation, but that the 2019 biop and the operations plan that were promulgated by Reclamation showed that Reclamation intended to violate the KBA and the rights that were found therein. Let me ask you a question. Ultimately, regardless of the adjudication of rights, Reclamation can only deliver available water. Isn't that correct? Yes, it certainly is. If you have a drought, it doesn't matter what the KBA did because there's not going to be any water delivered. Well, I don't know that I... Zero precipitation for the year. Not that Oregon necessarily is in as bad a situation as California, but we've had similar, we've had such things. But do you agree that the Bureau of Reclamation can only deliver available water? Yes, we would agree with that. Okay, and do you agree... This is voluminous authorities here, but somewhere in one of the authorities I read that available water is defined after the amount necessary to comply with the ESA and the obligations to the tribes has been satisfied. So with due respect, I do not agree with that. I believe that you're conflating two separate issues. Tell me why you're conflating two separate issues. So I believe that is Reclamation's articulation of how it distributes water, but that articulation is not contained anywhere within the claimant-based adjudication. Isn't that their solicitor's opinion? It was issued some years back. And we would maintain that Reclamation is required to abide by the water rights that exist under the KBA and that it may not adopt a position that is contrary to those. You know, I think an important aspect of the Endangered Species Act, remember, which the Ninth Circuit has said, is that it does not grant the administrative agency additional rights. It orders or obligates the administrative agency to discharge the authority that it already has under its authorizing statute in ways that are consistent with the ESA. But it does not give Reclamation additional water rights. No, but it can only deliver water that is available to deliver, and that availability is defined by after the ESA obligations have been satisfied. Only internally within Reclamation. That is not the law under the claimant-based adjudication. This is Reclamation years before this most recent KBA adjudication. I'm sorry, I don't know if I understand your question. What I'm saying is that this is the Reclamation's operating authority, and regardless of what the KBA did, it can only deliver the water that is available to deliver, and that comes with a lot of preexisting rights attached. So I think the distinction that we would make is that the definition of available water, you know, has both a practical connotation. Obviously the Reclamation cannot deliver water that does not exist, but whether or not water exists says little about the water rights that are at issue there, because water rights are set forth under a statutory scheme that each state has, and which Reclamation, among other federal agencies, has been ordered by Congress to follow. The federal government is subject to state law on water rights. It may have water rights that exist as a function of federal law, but those water rights are the definitions of those water rights. What those water rights mean exists as a creature of state law. It's understood, you know, it's interpreted by state courts in the first instance, and that this was the point of the McCarran Amendment. Aren't you or isn't your client also pursuing essentially similar relief in state court? I saw reference to a mandamus action and some follow-on orders there. What's the status of that? Your Honor, we have pursued similar or slightly different relief in state court as well. There was a motion for preliminary injunction that was filed in the Klamath Basin adjudication itself after this matter was dismissed. That case was removed by the United States to the District of Oregon. There has been a motion to remand pending in that suit for a number of months now. That seems like a truer McCarran administration claim, a more classic one. This one feels a little bit different because it's essentially a challenge to a set of operating procedures. How do you view this as sort of a McCarran administration case? The reason I would view this as a McCarran Amendment administration case is that the McCarran Amendment, what it does is it waives sovereign immunity. It doesn't otherwise prescribe or limit a court's jurisdiction. It simply waives sovereign immunity over certain parties and certain categories of rights. But does it waive sovereign immunity over tribes? It certainly waives sovereign immunity over tribal water rights. I believe that whether or not it waives sovereign immunity over tribes as parties is somewhat of a more open question, though, as we argue in the brief. We believe that it could be interpreted that way. I guess that's sort of what I'm wondering. If you were to call it a McCarran administration case, does it resolve this joinder problem or does it just sort of now restate it by asking, essentially, does the McCarran Amendment operate over and above Rule 19? I believe it does. I believe it resolves the issue because, as the Supreme Court noted in its footnote in St. Carlos Apache, the traditional assumption is that the U.S. is an adequate representative for the tribes and that any judgment against or to which the United States is subject would also be binding against the tribes as well, and that if the tribes were to object to the adequacy of representation, the remedy would be to intervene in the lawsuit. And then a decision not to intervene in the lawsuit, while the tribes could certainly make that decision, would be dubious at best, as the Supreme Court described. So essentially what you're saying is at least if the McCarran administration case gets to federal court, D-Day citizens just doesn't apply to a McCarran administration case. Yes. I believe that is the significant difference between this case and D-Day citizens, is that in D-Day citizens there was no statutory and specific waiver of sovereign immunity, whereas there is in the McCarran Amendment. Are there other examples of McCarran Amendment administration cases that are like this, or like what you're trying to do here, where you're essentially challenging some kind of other agency action under the APA? There are relatively few McCarran Amendment administration cases in general. There are a few that are identified in the brief, including a few that were in district court and federal court, even though they concern a state water rights adjudication. I don't have the citations. You're arguing that, what law do you cite that says that the McCarran Amendment waived the tribe's sovereign immunity as parties? So the primary authority for that is United States v. Oregon, which is holding from this court approximately 30 years ago in which both reclamation and the claim of tribes objected to being required to participate on the KBA on the basis of sovereign immunity. Well, the KBA is something different than this kind of a lawsuit. What I'm getting at is I just read a recent opinion that was written by Justice Kagan that talked about what it took to waive the tribal sovereign immunity rights as parties, and it says it has to be expressed, and yet there's no reference to the tribes as parties in the McCarran Amendment at all. Not only does it have to be expressed, it has to be really clear that that was the intent of Congress. I'm just wondering if you have any case that actually says that. So I think United States v. Oregon is the primary authority, and as we explained in the brief, objections based on sovereign immunity were raised by the tribes in that case, and the Ninth Circuit's holding was that the claimant tribes were required to participate in the claimant's base and adjudication. The Ninth Circuit even reached other arguments that the claimant tribes had raised, including arguments about due process that would not have been necessary to reach had the tribes retained sovereign immunity. But I understand the distinction Your Honor is presenting, and I think perhaps the easier way to reconcile the case law with prior Supreme Court precedent is to understand that the Supreme Court has always interpreted the United States to be an adequate representative of tribal water rights because it is the trustee for those water rights. I understand that, but in this case, hasn't at least one of the tribes been in litigation v. Bureau of Reclamation to show that their interests were not identical? I believe you're referring to a 2018 case that was previously filed by that tribe. What about the case that directly resulted in the biopsy issue? Yes, they have been involved in prior litigation with the Bureau of Reclamation. I think the mere existence of that reclamation does not show that they're inadequate representatives. I think that in this case, the Bureau of Reclamation and the tribes are aligned. Frankly, I think that in relation to the claimant's base and adjudication, the tribes and the Bureau of Reclamation have been aligned for many years and have been contesting for decades the ability of the claimant's base and adjudication to adjudicate any federal water rights. All right. Thank you, Counselor. You're well over. I will give each of you about all time, but let's hear, I guess we'll start with Mr. Somerville. Thank you, Your Honor. May it please the Court. Thane Somerville for the Hoopa Valley Tribe. This litigation is plainly not a proceeding within the scope of the McCarran Amendment. The McCarran Amendment has a discreet and limited purpose to waive the sovereign immunity of the United States to allow its joinder in comprehensive water adjudications within a state court's jurisdiction so that all rights can be comprehensively determined and administered comprehensively with all parties present within a state court's jurisdiction. This case is much different than that. This case presents claims by a subset of state water rights holders challenging federal agency implementation of federal law and federal rights that the irrigators claim affect their state law water rights. This case presents the intersection of federal law with state law water rights. That is not what the waiver of sovereign immunity under the McCarran Amendment relates to. The U.S. Supreme Court, the Ninth Circuit Court of Appeals, and other circuit courts of appeal have consistently held that the McCarran Amendment does not extend beyond its limited scope and that it does not waive sovereign immunity for all claims touching on state law water rights. Dugan v. Rank, the 1963 Supreme Court case addresses this issue. Metropolitan Water District case, South Delta Water Agency in this court. Miller v. Jennings in the Fifth Circuit, that's at 243 F. 2nd 157. All address cases that are like this case in that a water rights holder sought to bring claims that related to water rights against the United States but were not within the scope of a comprehensive adjudication or comprehensive administration of water rights. So what's the limiting principle that you're trying to develop for the McCarran Amendment that it's not because of federal versus state court, is that it? The point of the McCarran Amendment is to allow the United States to be joined in a proceeding that comprehensively brings all water users before a given court so that that court, and it's primarily state courts that do this, can have all parties before it, including the United States and including federal rights, so that it can determine the relative priorities of claims within that state's jurisdiction, enter a decree that binds the parties in their relative rights, and once those claims are determined, to administer those relative rights within the state's court's jurisdiction. So if Kidd believes that the Bureau of Reclamation is not following a McCarran decree, where does it go? Back to the adjudicatory body in the state that issued the decree to raise this complaint? Well, the Klamath Basin adjudication would have jurisdiction to administer the decree. We do not believe that the Klamath Basin adjudication would have jurisdiction over the claims that KID brings here, which are to challenge federal agency implementation of KID. I understand that, but let's just make it a little more generic. If Kidd thinks that the Bureau of Reclamation is violating the decree, the state water rights decree, where does it go to seek relief for that? I have to push back on the question a little bit, because it's a question of whether the right is within the scope of the decree, whether it's a claim that is really truly a state court claim about the relative water rights that are decreed in the decree. Well, I think they're saying it is. They're saying we have certain rights under this Oregon decree. You may disagree with that, but that's their position. If they want to try to vindicate that, how are they supposed to do that? In this case where they're trying to vindicate, they're trying to say that a federal agency is implementing federal law in a way that violates their state court water rights. So the proper form for that is in federal court. But the fact that they have a state law water right doesn't mean that they're immune from federal defenses. They are subject to what our federal defenses would be available to defendants in federal court. So I agree that KID's claim that they have brought is properly brought in federal court. But that does not mean that they get to be immune from the application of Federal Rule of Civil Procedure 19. Right, but you're also saying that it's not a McCarran administration complaint either. Because it absolutely isn't. A McCarran administration case would typically be done by the state court that adjudicated the rights and would have all of the state water rights holders present before that court. That's a primary fundamental principle of the McCarran Amendment, that it has to be comprehensive. There has to be all water rights holders present in the court that's adjudicating or administering. And clearly that's not the case here. And I'm not talking about HOOPA. I'm talking about the other water rights holders in the Klamath Basin adjudication. They're not present in this court. So this case can't be an administration of water rights case under the McCarran Amendment. Where are you getting that interpretation from the text of the statute? It says nothing about comprehensive adjudication. I'd point you to the Supreme Court case Colorado River Water Conservation District at 424 U.S. 800 that says that all water users on a stream are necessary parties in any court proceedings under the McCarran Amendment. And other principles in that case, it discusses that the main focus of the McCarran Amendment and the reason why sovereign immunity is waived to allow for federal claims is to fulfill the purposes of having comprehensive, not piecemeal, adjudications of water rights in one court and principally in the state courts. Okay. Go ahead. I have another question, but go ahead. I'll take your question. Well, I was about to switch gears actually to the adequate representation issue. Can I ask one thing before moving? So your position is not that the McCarran Amendment cannot be in federal court. It just has to be comprehensive in some way. And what's an example of that?  That's what it was. No, that was state court, I believe. No, but that's what the McCarran Act is all about is what the KBA did. Exactly, Your Honor. And one practical reason why we know that this is not a McCarran Amendment case is that the Klamath Irrigation District didn't bring their claims within the pending KBA. The KBA has been adjudicating the state court water rights for decades now, and KID has been participating in it. So isn't it odd that KID didn't bring their administration claims within the KBA, the pending McCarran Amendment proceeding? And looking at their complaint, there's no causes of action. Said another way, their causes of action in their complaint are expressly defined as under the APA. They're bringing APA claims to set aside federal agency action, which is the operating plan, just like the Shasta Butte plaintiffs are. I have a question. They can bring those claims, but what we're here fighting about is whether or not they can bring those claims against the tribes, whether they can bring claims, whether the tribes' sovereign immunity protects them from being parties to this lawsuit, which then actually, because the goal of their litigation would impact the senior tribal rights, has to be dismissed under Denae Citizens. But the claims they're alleging, both plaintiffs, are certainly not state claims. They're federal claims, and they should be brought in federal court as an initial matter. Absolutely. They're federal claims that should be brought in federal court, and as a result, they are subject to federal defenses, such as Rule 19, which has been applied in this circuit numerous times. And the issue on appeal here really, truly, it should be, whether the district court abused its discretion in carefully going through the Rule 19 analysis that applies to this case. For example, take the takings claim, which, you know, property is defined by state law. So here they're arguing that the federal government is taking property as defined by state law. So, therefore, it is dealing with the adjudication of water rights legitimately through a federal claim. And, again, I'd point you back to the number of cases in the U.S. Supreme Court and the Ninth Circuit that say the McCarran Amendment is not some free-floating waiver of sovereign immunity that allows a state law water claimant or rights holder to sue the federal government for any federal claim that relates to their state law water rights. That's not what the McCarran Amendment is about. It's about getting the United States and all parties in one place to comprehensively adjudicate and administer water rights. It is not some free-floating waiver of immunity that applies to any issue relating to a state law water rights holder's issues with how the federal government is implementing federal law. And before I leave this point, I want to go back to a question raised by the court. There is not one authority cited by KID, not one, that would give this court precedent to hold that this kind of case in this federal court is a McCarran Amendment administration of water rights case, not one. And the reason why there is such a sparse amount of case law involving federal court cases on administration of water rights is because those cases arise in the state court comprehensive adjudications, and then subsequently it's the state court that administers the water rights. They don't present federal questions like the claims that are present here, and there is no authority that would say that this kind of case is a, quote, McCarran Amendment case. Can you respond on the adequate representation issue? Because I think your friends on the other side basically say, listen, the tribes and the federal government have had their disagreements, but those are in the past, and the tribe can adequately represent your client's interests. What's your response? You'd be hard-pressed to find an area where there is more conflict present between the federal government and the respective tribes at issue here. First, the federal government is trustee to two tribes, both the Hoopa Valley Tribe and the Klamath Tribes. The Klamath Tribes have an interest in retaining water in Upper Klamath Lake. The Hoopa Valley Tribe has a diametrically opposed interest in releasing water from Upper Klamath Lake to flow down the Klamath River. So here there's a very unique situation in which the trustee has two beneficiaries with diametrically opposed interests, let alone separate from the separate question, which is that the federal government has interests and obligations to the water contractors. And as Judge Wardlaw pointed out, that this case arises directly as a result of extensive litigation brought by the Hoopa Valley Tribe against the Bureau of Reclamation to obtain the very operating plan under the ESA that is challenged here. Assuming that this case is a McCarran Amendment case, though, couldn't we read the Congress's waiver of sovereign immunity, at least to the tribe's water rights, as a finding that the United States is an adequate representative? Because otherwise the right would be an orphaned right, right? There's got to be someone defending it, and it seems like Congress has just determined that the United States is. This case belongs back in the Rule 19 rubric, in which there's been a number of cases involving tribes and federal interests, including cases where the United States was a trustee of tribal interests, and DNA Citizens is one of them. This court has never varied from the Rule 19 analysis, which analyzes whether or not there are conflicts that prevent a finding of adequate representation. This court has always addressed whether or not there are conflicts, and where there are inter-tribal conflicts, where the United States has conflicting trust obligations, this court has always found that the United States cannot be an adequate representative in the context of a Rule 19 analysis, and that's the analysis that applies here. But what are we supposed to do if we think that Congress said through the McCarran Amendment that the United States government is the adequate representative? Your Honor, this is not a McCarran Amendment case. The McCarran Amendment does not apply here. I get that. Assuming that, we disagree with you on that point, though. Does it necessarily lead us to conclude that the government is an adequate representative? No, it doesn't. I think you would still fall back on the Rule 19 analysis. So under the hypothetical you've presented, you're still going to be here in federal court under some ruling that the United States is the sovereign immunity from suit. We would still, as the tribe, have the opportunity to present our Rule 19 defense, and under governing Ninth Circuit law, you would go through the Rule 19 analysis, which is a practical and flexible analysis, and there has been no case in which this circuit has declined to determine whether or not a conflict of interest bars an adequate representation finding, and that would be the proper analysis to go through. And this case is rife with conflicts that prevent the United States from being an adequate representative of the Huba Valley tribe's interest in this case. Right, Counselor, you're over your time. Let's hear from Ms. Heron. Thank you, Your Honor. May it please the court, my name is Rachel Heron, on behalf of the federal government. In my limited time, I would like to jump in briefly on this issue regarding the scope of the McCarran Amendment, which is a waiver of the United States' sovereign immunity, and thus, like all waivers of sovereign immunity, must be construed narrowly. The United States does not dispute that the water rights that were adjudicated in the KBA are relevant to the claim that KID is bringing here. But resolving KID's claim here is not as simple as simply asking whether the KBA decided that the federal government has a state law property right to do what it's doing. KID, by the terms of its own complaint, is arguing that the United States is acting unlawfully in its operations plan for the project. To answer that question, you need to not only consider what the relevant state law rights are, but also what the federal government's obligations are under the Endangered Species Act. It's trust obligations to tribes like the California tribes, for example, that were not even a part of the claimant base and adjudication. It would need to consider the way that those federal obligations interact with the Reclamation Act's directive for the United States to follow state water law, and it would also need to consider the extent to which federal law may preempt conflicting state water rights. So is it your view, then, that a McCarran Amendment administration case is essentially a comprehensive water rights adjudication analogous to the KBA or sort of as an outgrowth to the KBA? Yes, Your Honor. There is no question that the first part of the McCarran Amendment suits for the adjudication of rights are contemplating something like the KBA, which is comprehensive. The second part of that, for the administration of such rights, I think is best read and consistent with the rule that SOG waivers be construed narrowly, must be read as something that is really a follow-on to one of those comprehensive proceedings. So I think the key is that where a cause of action is asking to resolve issues of law that were not decided and were themselves outside the scope of existing McCarran Amendment adjudication, answering those questions is not administering that adjudication. Instead, we'd say administering refers to things perhaps potentially reopening or seeking to clarify. Is it the government's position, then, that a federal action can never be a McCarran Amendment case, then? Your Honor, I don't think that the McCarran Amendment specifies whether an action needs to be brought in state or federal court. But you're saying the KBA is an example of McCarran. But is that it? I mean, is there possible that there's a federal way to get that McCarran Amendment? Your Honor, I will say I am not aware of any situation in which there has been a federal law claim brought that's been treated as an action to administer rights that were adjudicated. The one example, you know, there are very few cases involving the administration of rights piece of the McCarran Amendment. The one example that we do have that KID cites is the Hennon decision from the District of Nevada. And it's so far afield from this case that I think it's instructive. In there, the proceeding that was deemed to be an administration of rights was a proceeding brought in the same court that had adjudicated the water rights and produced the decree with all the same parties involved, asking the court to alter a priority date for certain rights that had included in that decree. So that is, you know, we know that that under the case law is a proceeding to administer rights I think whether a proceeding to administer rights adjudicated in a McCarran proceeding has to be brought in the court that administered the proceeding in the first instance is a question I don't have an answer to today, but I don't think it's necessary to resolve this case because in our view, at minimum, a proceeding to administer an adjudication is not a proceeding that it raises new legal issues that were outside the scope of that proceeding. How about the issue of the comprehensive nature of the parties involved? I think your counsel for Hoopla said essentially if it's a McCarran administration case, you need to have everybody involved and everybody's not involved here. Does the United States agree with that? Your Honor, I think it's certainly, I think the McCarran amendment certainly contemplates that you're going to be dealing with a proceeding with everyone involved. The text of the amendment itself refers to consent is given to join the United States as a defendant. Again, I don't want to say here that it is impossible to sort of have an administrative proceeding that is kind of a one-off with one or two parties that want to sort of fight something out together, but I don't think it's necessary to resolve that question to see that what is already been decided. I know you're way over your time. I had a couple more questions, but let me ask our presiding judge if that would be acceptable. Yeah, I think, yes, I think this is a complicated enough case that everyone should ask their questions. Thank you, Judge Wardlaw. What's the United States position on whether it could adequately represent the tribes? There wasn't a whole lot of that in your brief, I assume intentionally, but since now you're here, I have to ask the question. Certainly, Your Honor. So it is our view that under DNA citizens, we are not an adequate representative of the tribes' interests as that case defines adequate representation. That's a fair answer, but what about just outside of that? Certainly. If there were no DNA citizens decision, it is the position of the United States as a normative matter that when a federal agency is challenged as being out of compliance with federal law and the United States is defending itself against that action, we are the adequate representative of anyone who shares that interest in seeing federal government action upheld. Recognizing that even prior to DNA, there were decisions of this circuit that found that in some instances the United States was not an adequate representative of an absent tribe's interests. Those situations were primarily situations in which you had, the court found that there were conflicting tribal interests and the United States would not be able to effectively represent all those conflicting interests. And in the case of... Counsel, do we have conflicting interests here? It seems that you have here conflicting interests between the Klamath and the Hupa and as well as non-parties, other tribes that you, that the government is a trustee for right now that might conflict with what both Klamath and Hupa are saying and doing. Sure. So your honor, we don't dispute that the California tribes and the Oregon tribes, they can have conflicts with each other on sort of the relative scope of their rights. I would think just in this case that keeping the levels of the Klamath like higher is Klamath's tribe's interest, but Hupa is downstream and across the border and is depending on the water coming down. They don't necessarily want the highest level in Klamath Lake. They want to get some water out of there so they can have it down here in Northern California. Your honor, that's my understanding as well. I think again in a world where we were not bound by DNA, I think that the question that we understand the claims here to be posing is not sort of what the relative level in upper Klamath Lake versus releases should be, but does the United States have authority or does the United States act lawfully when it complies with its ESA obligations and acknowledges its trust duty to tribes? And on that issue, I think that the tribe's interest is the same, that the United States does in fact have an obligation to act consistent with the reserved rights of those tribes. And then the question of what precisely each of those reserved rights require potentially is a different matter, but not one that I understand to be raised by the plaintiff's claims. All right. And does the United States have an obligation to satisfy the requirements of the ESA before delivering water to the tribes? In a way that's been allocated, relative water rights have been allocated by a comprehensive adjudication. What's the United States' first obligation? The United States has an obligation under the Endangered Species Act not to take actions that will jeopardize the continued existence of listed species. Or to destroy their critical habitat. To the extent that doing that means that the United States cannot release or must retain or must do something with the water to prevent that happening, that is a requirement with which the United States must comply. All right. Do Judges Bress or Bumate have any more questions of the United States? I just have one quick question. Assuming that this case is a McCarran Amendment case, could we take Congress' waiver of sovereign immunity of the tribes' water rights to be Congress determining that the United States government is an adequate representative of that right? Because you're severing that right and the only person that's left to take care of that right is the United States government. Your Honor, just to clarify, the premise of your question is if this is not a McCarran Amendment case? Oh, no. If it is a McCarran Amendment case. Sorry. If it is a McCarran Amendment case. So I think that unfortunately the answer is still quite complicated there. I don't think that treating this as a McCarran Amendment case sort of vaults us all the way out of the Rule 19 question. And here is why. KID is only arguing that this is a McCarran Administration case, not an adjudication case. So if this is not a McCarran adjudication, then that means that we could not in this proceeding make a determination on what the scope of the Cuba Valley and Yurok, the California tribes' right is. So that question would still be outside of the McCarran proceeding and thus outside of the McCarran waiver of sovereign immunity as regards to the tribes' water rights. So with regard to that question, I still think we would be in this situation of asking whether we can have this federal law claim that is, you know, asking this court to make a determination as that affects the, you know, the interpretation of those rights in those tribes' absence under DNA Citizens. And with apologies, I have one more question for you as well, which is obviously DNA Citizens is the law of the circuit, but I take pretty seriously the United States saying the decision was wrong. And so why do you claim it was wrong? Your Honor, I think there are two reasons primarily that I would say that it was wrong. The first is on this adequate representation issue that we discussed. The United States believes that it is the adequate representative of those that have an interest in seeing federal action upheld when the federal agency is defending its own action. And we think that the particular criteria that the tribe, or excuse me, that this court applied in DNA Citizens, asking whether, you know, the United States sort of has the same interest in the collateral effects of that as the tribe are not the right question to ask. The other reason I think that we think it's wrongly decided has to do with the weighing of whether a case should go forward in equity and good conscience under Rule 19B. In our view, tribal sovereign immunity is obviously an extremely important factor. We also believe that the ability to get judicial review of federal agency action under the APA is also a compelling issue. And we are concerned about a decision that constricts that cause of action and, you know, the DNA Court's sort of own words as they decide it potentially removes from judicial review under the APA a class of actions that have to do with tribes and tribal resources and tribal land. Thank you. And thanks to Judge Wardlaw for allowing us to ask additional questions. Okay. Thank you, and thank you, Ms. Caron. Mr. Weiner, you're representing Plymouth. I am, Your Honor. May I please the Court? Jay Weiner here on behalf of the Klamath Tribes. And if I could, let me drive straight into the adequate representation question. And I think you've actually heard in several of Ms. Caron's answers exactly why the United States is not an adequate representative of the tribes in this issue. And I just want to take a step back from that, which is that this is not a McCarran Amendment proceeding, and at least as it pertains to the Klamath Tribes. The reason that this can't be a McCarran Amendment proceeding is that the KID is not asserting that what we have is a conflict between the Klamath Tribes' water rights and water rights that were decreed in the KBA for Klamath irrigation by the project water users. The Klamath Tribes do have a senior time immemorial water right that was decreed in the KBA to protect certain elevations in Upper Klamath Lake. But as part of the unfortunately now failed Klamath Basin restoration agreement, the Klamath Tribes in the United States entered into, in conjunction with project irrigators, a stipulation that the tribes would not exercise their senior water right against water rights with a priority date senior to August 1908, which is the junior most of the project water rights decreed in the KBA. The interest that the Klamath Tribes are standing on here, and the reason that the relief that both appellants seek is so directly threatening to the Klamath Tribes' interests, and why the district court was correct and certainly not abused its under Rule 19, is to our treaty-protected fishery, to the treaty protections that we have to two critically endangered species, the Tuam and the Koptu, the Lost River Sucker and the Shortnose Sucker, that have been of immeasurable cultural, spiritual, and material importance to the Klamath Tribes for millennia. And because of the stipulation, which disclaims our ability to make a water rights call, but preserves our right to rely on statutes of general application, such as the Endangered Species Act, the only thing that we have at this point in time, until that stipulation lapses, is Reclamation's compliance with its Endangered Species Act obligations. That's how we protect those species from going extinct, and they are very, very close to blinking out of existence entirely. Assume there's an environmental group that disagrees that the federal government is complying with the ESA here. The tribe disagrees and thinks that the ESA is being complied with. Under your theory, nothing can be done about it, right? It's unadjudicable. Well, that's exactly the Deschutes River case that this court very recently ruled on this past June. That is exactly the fact pattern in Deschutes River Keepers, where there is a hydroelectric dam that the United States had worked very, very closely with the local tribe to ensure that it was operated in such a way that it was protective of tribal treaty interests. And an environmental group did in fact bring a suit challenging the United States operation of that dam that this circuit in June dismissed invoking D-Day and the wall of circuit authority that D-Day was built on. That's exactly the fact pattern because tribal sovereign immunity is different and is, as Ms. Herron appropriately recognized, a seriously, significantly important consideration in what is a very practical and fact-based determination. I mean, one of the things that's going on in this case is you hear from the appellants that the sky is going to fall if this decision is upheld. This is in fact a modest decision that sits in an incredibly factually complex basin. What we have is we have tribes with water rights in two different states. We have Reclamation operating an irrigation project that spans the state lines. That by itself limits the practical applicability of any decision here because this is a very unique situation to the Klamath Basin because of the unique hydrology, the unique infrastructure, and the unique tribal history in the Klamath Basin itself. And if I could also go to your adequate representation question, Judge, the reason that the United States and the reason that the McCarran cases that the appellants point to, specifically Nevada and its progeny, don't answer the question that the United States is necessarily an adequate representative is that all of those cases arise in the context of whether the United States is an adequate representative to bring tribal claims forward in a state court adjudication. And what those cases hold, and this is consistent with San Carlos, is that, yeah, the United States can bring claims, water right claims, on behalf of tribes because that's the point of McCarran is to get all of those claims in front of an adjudication. And the theory behind Nevada is that the United States is perfectly capable of advancing maximal tribal claims, advancing maximal Reclamation claims, advancing maximal Fish and Wildlife Service claims, all in the same proceeding because they all ultimately are entitled to as much water as the United States can legally and factually show, and will slot into a prior appropriation system consistently so that there is, under the logic of those cases, no conflict and nothing that limits the United States in its ability or its need to trim or pare back its claim on behalf of one of the parties it has to represent in favor of the other. And that's true in an adjudication standpoint. That is absolutely not true in an administration standpoint where administration disputes essentially are water users whose rights are determined by a decree, fighting among each other how a limited resource, to go to Judge Wardlaw's very good point, can be allocated where there is an inherent conflict because the more water that needs to go to satisfy, for example, Hoopa tribe water rights. And, again, as a water right held in a different state, Hoopa is just not part of the KBA, but there is a direct conflict between Reclamation's ability to protect and defend the water rights claims that it asserted in the KBA on behalf of the irrigators and its ability to deliver water that it owes to the Hoopa Valley tribe. And so none of these cases, none of these McCarran cases, about the adequacy of the United States as a representative at all deal with the scenario where you've got an administration dispute where you're actually figuring out who, on a day-to-day basis, gets an individual cut of a finite resource at a particular moment in time. I see that I've exceeded my time, and I apologize for that. No need to apologize. Let's see, Mr. Deitchman, you had asked for a minute? Correct. Okay. Thank you, Your Honor. I appreciate the extra time. I just want to bring us back to what the actual claims are in the Shasta View et al. case. Again, we're not saying it's a McCarran case. Judge Wardlaw, you referenced the solicitor opinion. Our case is saying that the legal framework that Reclamation uses to develop operating procedures for the Klamath Project is wrong or at least out of date. I've cited to the Central Valley Project in a changing view on the scope of Section 7 discretion. There's also a case out of the 10th Circuit that's cited in our brief, so I'll leave it at that. There's no relief sought against the tribes. Even if the water users had the most senior right in the basin, we would have still brought these claims that the ESA discretion is incorrect. And finally, I take issue with counsel's statement that this is a modest decision. The impact of this decision cannot be understated. What the court is saying here is that water users in the Klamath Basin have no right to challenge Bureau of Reclamation determinations in the courts in their home circuit really ever again. And so in equity and good conscience, this case has to proceed. We have to have a day in court to challenge these administrative determinations. The legal framework is incorrect and needs to be corrected. This does not mean that the ESA goes away. This deals with Section 7 discretion. ESA doesn't go away if the scope of Section 7 consultation changes. There's always a take prohibition. So we're not asking you to impact the fisheries here today. We're merely asking for a day in court to ensure that a federal agency applies federal law correctly. Thank you. It seems like you're really arguing against D&A citizens. Yeah, I guess I wanted to clarify in D&A. I mean, in D&A, the case was literally an attack on the permit for an absent tribal entity's mining operation. Here, we're alleging that the legal framework that the Bureau of Reclamation uses to manage the climate project is incorrect. There's no attack on tribal water rights in the Central Valley project. That case that deals with ESA discretion, there's no impact on priority administration of water rights. We're not attacking the tribe's water rights in our case. There's no business interest at stake. Again, the federal government should apply current understandings of the ESA correctly. All right. So, let's see. Mr. Brzezinski, you also asked for a minute. I asked for two. I will defer to the court. I understand we have gone long over argument time. I forgot. Sorry. Perfectly all right, Judge. Thank you for the extra time. I do appreciate it. There were a few issues that were brought up by counsel on the other side that I'd like to address. There was an assertion brought up about the comprehensive nature of both the adjudication as well as the administration. So, prior Supreme Court precedent on comprehensiveness does talk about state adjudications. There is little precedent on administrations. I do not believe that any of the Supreme Court precedent out there suggests that every party needs to be joined to every action to administer water rights because most parties will not be in conflict about those water rights. Here, the conflict on a water rights basis is between KID, which has certain water rights, and Reclamation, who KID is alleging is taking those water rights. That's sort of hard to understand, though, in a way because the water is a finite resource. You start taking it from one person, you're taking it away from somebody else, and maybe there could be a sort of one-off administration type claim, but it seems unusual given just the nature of what a McCarran proceeding is really trying to do. I think the explanation that I would provide for that is that typically in states with prior appropriation schemes, the conflict would really be between one water rights holder and the next most junior or senior water rights holder. It would be beyond a doubt that everybody below a certain point would not have entitlement to water because they're lower in priority. There has been a number of comments made about the sort of interstate nature of the case because there are California tribes on one side and Oregon tribes on the other. I would point out that this is not a suit for interstate water rights adjudication. There is a remedy for interstate water rights disputes. Those are interstate compacts between states or suits for equitable apportionment of the shared water source. They are not suits that individual water rights holders on either side can bring. I see I'm out of time, so unless your honors have any additional questions, we will submit. Thank you, counsel. Okay, Climate Irrigation District versus the Bureau of Reclamation is submitted, and this session of the court is adjourned for today. Thank you all. This was an excellent argument.  Thank you, your honor. Thank you, judge.
judges: WARDLAW, BRESS, BUMATAY